No. 16,716.

HAHN *v.* SCHOOL DISTRICT NO. 4, ROUTT COUNTY.

(245 P. [2d] 288)

Decided June 2, 1952.

Mr. EMORY L. O'CONNELL, Mr. CLIFFORD E. MORGAN, for plaintiff in error.

Mr. C. R. MONSON, Mr. ROBERT H. GLEASON, Messrs. HIGBEE & HIGBEE, for defendant in error.

564

Mr. Justice Holland delivered the opinion of the court.

Plaintiff in error as plaintiff below filed this action to recover seven hundred fifty dollars as salary for the months of July and August 1949 under the following contract:

"Teacher's Contract.

"Mr. Clyde L. Hahn,
Steamboat Springs, Colorado.

"At a regularly called meeting of the Board of Directors of School District No. Four in Routt County, Colorado, held this First day of March, 1948, you were employed to teach in the public school of said district for the period beginning Monday, August 30, 1948, and ending August 31, 1951, at a salary of Three hundred seventy-five ($375.00) Dollars per month, payable monthly or in thirty-six monthly installments in school warrants as provided by law.

"The conditions of your employment are that you will faithfully observe the rules and regulations adopted by the Board for the government of said school; that you will exercise reasonable diligence in looking after the preservation of all school property under your jurisdiction; that you will make promptly and correctly all reports of the school required by the County Superintendent; that you will keep a correct register of the school, and file the same with the President or Secretary of the Board or the Principal of the school at the close of the school year as required by law; and that you hold a legal Certificate under the laws of the State of Colorado. No teacher shall be dismissed without good cause shown, which includes a hearing.

"You are to act as superintendent of schools and will have charge of both the grade school and the high school.

"This contract is subject to the provisions of Chapter

226, Session Laws of Colorado, 1945, entitled: 'An Act Concerning Schools, and to amend Section 249, Chapter 146, 1935 Colorado Statutes Annotated.'"

"(Seal)   "Roy P. Hofstetter, President.

        E. L. Michel, Treasurer.

"Attest:

M. W. Leckenby, Secretary.

"I hereby accept the above employment upon the conditions stated.

       "Clyde L. Hahn, Teacher."

During the latter part of June 1949, plaintiff sent defendant school board a letter in the form of a resignation, effective September 1, 1949. Effective as of June 6, 1949, plaintiff obtained employment in the city schools of Boulder and on June 26, moved his household effects and changed his residence from Steamboat Springs which is located in School District No. 4 in Routt county. On this 26th day of June, he met Hofstetter, a member of the defendant school board, and told him that he was moving to Boulder. Hofstetter asked him if everything was taken care of and plaintiff said it was. The following day a special meeting of the school board was held and plaintiff's letter of resignation was presented to the board. The minutes of this meeting show, "A letter of resignation from Superintendent Hahn was read and *excepted* by the board, the effective date of the resignation was to be checked into and decided at a later date. * * *." At this special meeting the board employed Sauer as superintendent and fixed his salary effective July 1, 1949. Sauer had previously served as high-school principal in the defendant district and his contract as principal was cancelled at this special meeting. The minutes also show that Sauer was paid his salary as principal for the months of July and August 1949 in addition to his salary as superintendent for those months under the new employment. The record does not disclose any requests by the board or any member thereof, during the summer of 1949, to plaintiff to perform any

particular work except that he was requested by a member of the board to attend the board meetings. Plaintiff made three or four trips from Boulder to Steamboat Springs during the summer in connection with some of his duties as superintendent of defendant schools, the last trip being about the 27th day of July, when he worked all day and night with the then secretary of the board in making out reports. Plaintiff was paid $350.00 a month by the Boulder school board for the months of June, July and August and received $100.00 in addition for moving expense from Steamboat Springs to Boulder. Defendant board refused to pay his demand for salary during the months of July and August and plaintiff brought this suit to recover, on the general theory that his contract was effective to September. 1, 1949, and that this contract was terminated by defendant without notice or hearing. The trial court found against plaintiff, concluding that he had voluntarily terminated his employment and that under the circumstances of the case, notice and hearing was not required.

Error is specified to these rulings of the court. The real question presented is: Was plaintiff discharged, or did he voluntarily breach or abandon his contract? There is but little conflict in the evidence on most matters that are material here. It might be said that the only serious conflict is over the question of the duties of school superintendent during the vacation months, namely, June, July and August. The customary teacher's contract provides generally and approximately nine months' work with twelve months' pay. In other words, the contract price is payable in twelve installments instead of nine. The average teacher's duties are concluded within a week or at least a short time after the expiration of the nine-month term. In the case before us it has been shown that the board hired Sauer, who had been acting as principal and teaching classes, as the new superintendent to supplant plaintiff. The record contains some testimony about the board having paid

Sauer his salary as principal for the months of June, July and August, 1949, in addition to a salary as superintendent covering those months. The regularity of this situation cannot be questioned because Sauer had earned his salary by teaching nine months, but had not yet received the last three installment payments. He would have drawn this principal's pay had he not been in any other employment.

Plaintiff contends that it was customary in the defendant district, and elsewhere, for superintendents to obtain outside employment during the summer vacation if they so desired and still receive compensation under their contract. It is not disputed that the duties and work of superintendent do not cease during the summer vacation and it is in evidence here that there was an unusual amount of work required of the superintendent in defendant district during the summer of 1949 owing to building programs, bond issues and other numerous duties which were all a part of the superintendent's job. In fact, it is shown by the evidence that the new superintendent Sauer, who was employed as of July 1, 1949 to take plaintiff's place, was busily employed with the superintendent's duties the entire summer vacation. Plaintiff claims that he was never requested to come back and perform any specific duties; that he never refused to do anything; and that in fact he did go back and do some work with reference to preparing the reports and an item or two of that sort. The difficulty, however, rests on the proposition that he was not there and not available, and by his correspondence, exhibits in the case, he admits that he could not be back because he was busy, which, of course, means that he was busy at, and in, his new employment at Boulder which became effective June 6 and for which he received full-time payment. He contends that his resignation as tendered was to be effective as of September 1, and that his contract, of course, did not expire until that time. However, he early advised that he was seeking employment

elsewhere and was not sure about it and did not want anything said, and to follow that up, he consummated the deal for his employment at Boulder effective as of June 6, and assumed his duties there; that in the latter part of June he moved his belongings from Steamboat Springs to Boulder and established his residence. The day after he told a member of the board that his household goods were on the road, the special board meeting was held at which plaintiff's resignation was before the board and accepted. The board at that meeting made arrangements for the employment of Sauer as superintendent to take plaintiff's place and cancelled Sauer's contract for the ensuing year as principal. On the question of the board's action at that time with reference to plaintiff, we can well adopt the language of the trial court in its findings, as follows:

"He submitted a resignation true enough, with the proviso that was effective September 1, 1949, but I believe the Board of Directors of this school district was warranted in taking the view and assuming as it did that the plaintiff was in point of actual fact, discontinuing his activities and his work as superintendent of the schools of School District No. 4.

"Viewing the matter after the fact in retrospect, that is precisely what occurred. I will discuss that in a moment but the court, putting itself in the position of the Board of Directors on or about the 1st day of July, 1949, would certainly conclude and find and determine, for its own purposes, and in the administration of the school affairs, that the plaintiff was through with the active and adequate discharge of his duties in Steamboat Springs and in this district.

"It seems to have been in contemplation of the plaintiff and his counsel, that during the summer months his duties were extremely limited and commencing in the latter part of May he had nothing further to do except informal rather trivial matters and duties such as would not interfere with a full time job elsewhere,

but that is not true. The court can't believe that after hearing the evidence in this case, particularly was that untrue during the summer of 1949. There were numerous important things to do—continuing duties to be taken care of and discharged by the superintendent of schools. * * * But the duties required of him during July and August of 1949 were almost continuous. It wasn't up to the Board of Education to call upon Mr. Hahn to take care of his job under his contract. If he was ready, willing, and able and had he done what he should have done that would have been the answer. The fact is when the board was confronted by this apparent certainty that he wasn't going to do it they employed another man, but even that doesn't excuse plaintiff from at least attempting to carry out his duties, at least offering his services."

The cases cited by counsel for plaintiff, namely *School District v. Parker*, 82 Colo. 385, 260 Pac. 521; *School District v. Shuck*, 49 Colo. 526, 113 Pac. 511; *School District v. Youberg*, 77 Colo. 202, 235 Pac. 351; and *School District v. McComb*, 18 Colo. 240, 32 Pac. 424, are all distinguishable from the case at bar by the controlling fact that in these cases cited there was no indication by the teacher that the contract had been broken or abandoned, and, of course, the right of the teacher to have notice and hearing was upheld.

■■ It seems to be the contention of plaintiff that this case should be controlled by the same construction of the contract before us as is given to the regular so-called "teacher's contract." It is true the printed form of the contract is that of a regular teacher's contract, and since it was not a contract for the employment of a teacher, as such, it is unfortunate that more care was not used in the preparation of a contract which set out the duties of a superintendent as distinguished from those of a school principal. The record discloses that this contract was prepared and sent to the board by plaintiff. Under the evidence here, it cannot be denied that

the duties of a superintendent in this particular district are entirely different from those of principal. Plaintiff, as superintendent, did not teach any classes, and it is undenied that there is continuing work for the superintendent throughout the so-called school-vacation period. No doubt there would be no objection made if plaintiff, as superintendent, had spare time not consumed by his duties as superintendent and employed that spare time in some extra, outside, temporary work, not to the neglect of his duties as superintendent; however, here it was not a matter of plaintiff taking on extra work in his spare time, but he took on full-time employment beginning June 6 for the ensuing year, thus alienating himself from his claimed position as superintendent of defendant district during that period. He did not take on extra work with the thought or intention of returning to his position with defendant district. His new position was accepted and compensation therefor started before the date of his letter of resignation. When plaintiff took this action and removed himself and his residence from the scene of his duties with defendant, it was tantamount to an abandonment of his contract and defendant board was justified in so believing. This precluded plaintiff from a claim of breach of contract by defendant. We need not cite authorities on the question that where an employee abandons his contract he is not entitled to damages for breach thereof, and it follows that where there is no actual discharge, as such, of an employee, the employee is not entitled to notice or a hearing as provided in the contract before us.

■ Any conflict in the evidence concerning the vital questions in this case was resolved against plaintiff by the trial court upon sufficient evidence, and judgment thereon will not be disturbed.

The judgment is affirmed.